## No. 12,562.

### W. B. DANIEL VS. HIS CREDITORS.

A syndic's sale of real estate discharges only those incumbrances which the insolvent placed upon it, and not those by which it was burdened at the time he purchased it.

The vendee of mortgaged property is at liberty to make a sale thereof to a stranger who consents to assume the payment of the mortgaged indebtedness as part of the purchase price, notwithstanding the original act contains the pact *de non alienando;* but to constitute such an assumption an abandonment of the right of the mortgagee thereunder he must either have intervened in the act and made a formal renunciation thereof, or performed some other act of equivalent import.

APPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

---

*E. Evariste Moise* for John J. Storck, Plaintiff in Rule, Appellee.

---

*Rice & Montgomery* for Mrs. Caroline W. Bellsnyder, Defendant in Rule, Appellant.

---

*Dinkelspiel & Hart* for Joseph Oury, Syndic, Defendant in Rule, Appellee.

---

Argued and submitted December 3, 1897.
Opinion handed down December 28, 1897.
Rehearing refused February 21, 1898.

The opinion of the court was delivered by

WATKINS, J. Mrs. Carrie B. Bellsnyder prosecutes this appeal from a final judgment which made absolute a rule which had been sued out by John J. H. Storck against the syndic of the general creditors of Daniel and the appellant as the holder of a note having a vendor's lien and mortgage, on property which the syndic had sold, to compel them to show cause why the inscriptions of mortgages and privileges operating against a said property should not be canceled and erased—the plaintiff in rule having purchased said property at a public sale made by the syndic, his claim is, that the mortgages and liens should be transferred to the proceeds of sale and a clear and unincumbered title made to him.

The syndic, in answer to the rule, averred that he had declined to execute such an act of sale as said purchaser demanded for the reason that counsel for Mrs. Bellsnyder, as well as her agent, had notified him that she was not bound by said syndic's sale, and that same did not, in any way, affect her mortgage; but he expressed a willingness to sign the act if the court so ordered.

The judgment of the court was in keeping with the allegations and prayer of the plaintiff in rule.

It appears that on the 16th of April, 1895, Mrs. Henrietta B. Cleveland, wife of Wm. B. Daniel, conveyed to widow Esther J. Trask three lots of ground, situated in New Orleans, for the price of four thousand dollars, of which the sum of one thousand seven hundred and fifty dollars is recited in the act of sale to have been paid in cash, and for the remainder, the purchaser executed her note for two thousand two hundred and fifty dollars, with vendors lien and mortgage consented thereon as security for the payment thereof—said note having been made payable to the maker's own order, and endorsed at one year after date; and bearing eight per cent. interest from date until paid.

The act of sale stipulated a special mortgage importing a confession of judgment in favor of the then present or any future holder of said note; and it also contained the covenant that in case of the failure of the maker to pay same at its maturity, the holder should be entitled to enforce said mortgage and vendor's lien by executory proceedings, and the mortgaged property be sold without the benefit of appraisement.

The insolvent made himself a party to the act of sale and mort-gage, which contains the stipulation of the *pact de non alienando* in these words, viz.:

" Hereby binding herself and her heirs not to alienate, deteriorate, nor encumber the said property to the prejudice of these presents." But Daniel did not sign the note nor promise to pay the same.

The act was duly inscribed in the mortgage office.

On the 29th of April 1896, the aforesaid purchaser, Mrs. Esther Jane Trask, by notarial act, conveyed the aforesaid mortgaged prop-erty with full subrogation and substitution and with all legal war-ranties to Joseph Oury, syndic of the creditors of W. B. Daniel, for the use and benefit of said creditors present accepting and purchas-ing same—the act of sale specifying particularly that it was the same property which the vendor had acquired from Mrs. Henrietta B. Cleveland, wife of W. B. Daniel.

The price stipulated in the act of sale as the consideration for the sale was two thousand three hundred and fifty dollars, one hundred dollars of which is recited to have been paid in cash; and in satis-faction the balance the aforesaid syndic of the creditors of W. B. Daniel obliged and bound said creditors " to pay in place and stead of the said Mrs. Trask notes up to the sum of two thousand two hun-dred and fifty dollars, secured by vendor's mortgage on said prop-erty."

The act was signed by Mrs. E. J. Trask and by Joseph Oury—the latter appearing in the same as syndic of the creditors of W. B. Daniel, and it is signed by Max Dinkelspiel and John T. Whitaker as attesting witnessess.

It appears from the record that soon after the aforesaid transfer to Oury, syndic, John T. Whitaker, as agent and attorney for the appel-lant as the holder of said mortgage note for two thousand two hun-dred and fifty dollars, received payment from the attorneys of said syndic of the sum of one hundred and eighty dollars as the amount of accumulated interest thereon up to the 16th of April, 1896—a date only a few days prior to the date of the syndic's acquisition of the property—said receipt of the attorneys bearing date May 16, 1896.

But at the foot or bottom of said receipt and over the signature of Whitaker, agent and attorney, occurs this phrase, viz.:

" Said creditors assuming the future payment of said note and interest."

On the 20th of January, 1897, the court *a qua* granted an order at the request of the syndic for the convocation of a meeting of the creditors of Daniel for the purpose of fixing the terms and conditions of the sale of the real estate standing in the name of the syndic of the creditors—the petition of the syndic suggesting the advisability of a sale being made.

On the 2d of February, 1897, the creditors were duly assembled and, as the result of their deliberations, they declared " that the property herein surrendered, recovered by the syndic, and now standing in the name of Joseph Oury, as syndic of the creditors of W. B. Daniel, be sold at public auction, ' on terms of credit, or cash, at the purchaser's option.' "

In accordance with the foregoing order and recommendations, appraisers were appointed, and they appraised the property at $1800; and at the auction sale, in pursuance thereof, the property was adjudicated to the plaintiff in rule for the sum of $1200, same being two-thirds of the appraisement.

The testimony of Mr. Whitaker, agent, is to the effect that he represented Mrs. Mary Whitaker in collecting the interest on the mortgage note, for which he gave the above described receipt, and that he represented her for no other purpose.

That he collected the interest money from the attorney of Oury, syndic of the creditors of W. B. Daniel; that he had nothing whatever to do with the deed from Mrs. Trask or anything appertaining thereto. That the mortgage note passed from Mrs. Whitaker to the appellant, Mrs. Bellsnyder, as her daughter and heir. That prior to the syndic's sale he received a letter from the attorneys of the syndic, attracting his attention to the fact that the mortgaged property was to be sold; and he admits that he was present on the day the property was sold by the auctioneer, but for the only purpose of looking after the sale of another piece of property. That he was not the appellant's attorney at the time of the sale.

The witness further states that he " has never under any circumstances had anything whatever to do with the insolvency of Daniel," and he further declared that he had not at any time " made any consent whatsoever in this matter as the representative of (his) mother, and could not have (done so) as the representative of Mrs. Bellsnyder." He further states that to his knowledge neither has his sister or his mother taken any part in these proceedings.

The argument on the part of the appellant is, that she never in any way participated in the insolvency proceedings, and had no notice of either the proceedings in Daniel's insolvency, or the alleged judicial sale which was made of the property on which she held a special mortgage containing the stipulation of the pact *de non alie-nando*, and a waiver of the benefit of appraisement, and the right to proceed by executory process in the collection of his note against the then present or any future holder thereof without reference to, or regard for any subsequent alienation thereof—citing Levy, Syndic, vs. Sheriff, 48 An. 410, and other authorities therein referred to.

It is further to the effect, that the statement which is contained in the receipt that Whitaker gave the attorneys of the syndic for the interest money, viz.: " Said creditors assuming the future payment of said note and interest " can not be construed as binding the *holder* of the note to a waiver or renunciation of the mortgage—said agent being wholly unauthorized to make the said admission, or to bind his principal thereby.

Our examination of the record has utterly failed to disclose in Whitaker, agent, any such authority, or any knowledge on the part of the holder, that such a receipt had been given by him to the attorney of the syndic; and the testimony shows that the endorsement on the back of the note, which evidences the receipt of the interest, is in these words, viz.: " Interest paid on this note up to the 16th April, 1896.   John T. Whitaker, for holder of mortgage note."

That was the proper receipt for the collecting agent to have given; and it seems to have been sufficient to effectuate every necessary purpose.

The additional receipt which the agent gave to the attorneys for the syndic seems to us to have been a voluntary act on his part, one purely *ex gratia* and not binding on his principal.

Mrs. Esther J. Trask is the debtor of appellant and not the creditor of W. B. Daniel, the insolvent; and their assumption of the debt of Mrs. Trask in favor of appellant did not have the effect of releasing her therefrom.   For that purpose the consent of the appellant was necessary; otherwise the novation of the debt by the substitution of a new debtor did not take place.

In our opinion the most that can be affirmed of the effect of the transaction which took place between Mrs. Trask and Oury, syndic,

was to give possibly an additional security to appellant; though we have doubts about that, as the creditors of the insolvent did not intervene in the transaction, and assumed no personal responsibility.

We can perceive no impropriety in the act of the appellant's agent in accepting payment of interest from the syndic; nor did that act, in any way, make appellant a party to the insolvency proceedings.

In Levy and Carter, Syndic, vs. Thompson, Sheriff, 48 An. 410, this court held: That a syndic's sale only divests the mortgages which have been imposed upon the property by the insolvent. Like principles are announced in Succession of Adam Thompson, 42 An. 119; see also Traendle vs. Bouchel, 33 An. 753; Succession of Van-couet, 11 An. 383. The assumption by Oury, syndic, of the indebted-ness of Mrs. Trask, to the appellant, conferred no greater right on the latter than she had already by virtue of the stipulation of the pact *de non alienando* in the deed of sale and mortgage—that pact conferring upon her the right to enforce her mortgage against the property mortgaged in the hands of any third person, and without any previous notification.

This proposition is elementary and needs no citation of authority to support it.

In our opinion the case of *City Bank vs. Walton*, 5 Rob. 158, has no application to the instant case. In that case the court said:

"The bank having intervened in the act of sale from Walton to Samuel C. Ogden, and consented to the transfer of the property mortgaged, we think the clause *de non alienando* in the mortgage is modified in its effects, if not entirely destroyed, and that the pro-ceedings should be against the third possessors of the property."

There is no question of the correctness of that opinion; but the appellant neither intervened, in the act of sale from Mrs. Trask to Oury, syndic, nor did she in any way assent thereto. Nor do we consider the agent's acceptance of an interest payment from the syndic as a renunciation of the non-alienation pact.

The facts of the case of Mitchell vs. Cooley, 5 R. 240, which is cited by counsel for plaintiff in rule, are as follows, to-wit:

Mitchell sold a tract of land to Mrs. Camp, partly upon terms of credit, retaining a special mortgage and vendor's lien thereon. The vendee subsequently made sale of the property to Daigre, who assumed the payment of the mortgaged indebtedness of his vendor as

a part of the purchase price. Subsequently Daigre sold to Robin, who likewise assumed the payment of the mortgaged indebtedness of his vendor as a part of the purchase price. Subsequently Robin sold to the defendant, Cooley, who likewise assumed the payment of the mortgaged indebtedness of his vendor as a part of the purchase price.

Subsequently the defendant sold to his brother, who likewise assumed the payment of the mortgaged indebtedness of his vendor as a part of the purchase price.

The original vendor, Mitchell, having died, and one of his sons having attained the age of majority, sued the defendant for his virile share of the defendant's indebtedness as evidenced by the aforesaid assumptions. And the defence tendered was: "*Defendant was not personally* bound to petitioner under the act of sale of Robin to him; that he only bought the property subject to the payment of the twenty-five hundred dollars," etc.

This statement shows clearly that there was no question in that case relative to the *original vendor's acceptance of the defendant's assumption;* there could not have been, as the suit brought was an *ordinary* action for the enforcement of defendant's compliance therewith.

That decision does not hold that the plaintiff or his ancestor had in any way *accepted that assumption* prior to the institution of that suit. The judgment appealed from is erroneous and must be reversed.

It is therefore ordered, adjudged and decreed that the judgment be annulled and reversed; and it is now ordered and decreed that the demands of plaintiff in his rule be rejected at his cost in both courts.